IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Statesville Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **RADFORD QUARRIES, INC.** | ) | Case No. 19-50454 |
| | ) | |
| | ) | |
| Debtor. | ) | |

## PLAN OF REORGANIZATION

Radford Quarries, Inc. submits this Plan of Reorganization pursuant to section 1121(a) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

## ARTICLE I
## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1    <u>Administrative Claim</u>. Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of title 28, United States Code.

1.2    <u>Administrative Claims Bar Date</u>. The date thirty (30) days after the Confirmation Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals.

1.3    <u>Allowed Administrative Claim</u>. All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.4     Allowed Claim. Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor individually or jointly or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim. A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code. Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5     Assumed Agreement. Each of the Debtor's unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.6     Avoidance Action. Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.7     Avoidance Action Claims. Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.8     Ballot. The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.9     Bamboo. Bamboo Road, LLC.

1.10     Bankruptcy Administrator. The United States Bankruptcy Administrator for the Western District of North Carolina.

1.11     Bankruptcy Code. The Bankruptcy Reform Act of 1978, as amended, and memorialized in title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.12     Bankruptcy Court. The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

1.13     Bankruptcy Rules. The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.14    <u>Borrowers</u>. D.J. Cecile, Jr. and Jennifer Cecile.

1.15    <u>Business Day</u>. Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.16    <u>Cash</u>. Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.17    <u>Caterpillar</u>. Caterpillar Financial Services Corporation.

1.18    <u>Chapter 11 Case</u>. The Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code which is pending before the Bankruptcy Court (Case No. 19-50454), in which the Debtor is the debtor in possession.

1.19    <u>Claim</u>. Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.20    <u>Class</u>. Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.21    <u>Confirmation Date</u>. The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.22    <u>Confirmation Hearing</u>. The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.23    <u>Confirmation Order</u>. An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.24    <u>Contingent Claim</u>. A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.25    <u>Creditor</u>. Any Person that holds a Claim against the Estate.

1.26    <u>Debtor</u>. Radford Quarries, Inc.

1.27    <u>Disclosure Statement</u>. The disclosure statement filed with the Bankruptcy Court with respect to this Plan, pursuant to section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.28    <u>Disputed Claim</u>. A Claim which is the subject of a timely objection interposed by the Debtor, if at such time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.29    <u>Disputed Claims Reserve</u>. The interest bearing reserve account(s) established by the Reorganized Debtor pursuant to Section 8.3 of this Plan from which all cash distributions under the Plan shall be made with respect to all Disputed Claims.

1.30    <u>Distribution Date</u>. With respect to any Allowed Claim, each date on which a distribution is made with respect to such Allowed Claim, including the Effective Date, on which distributions of cash and other assets are to be made by the Estate.

1.31    <u>Effective Date</u>. The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived.

1.32    <u>Equity Interest</u>. Any interest in the Debtor represented by any class or series of capital stock or membership interests of the Debtor prior to the Petition Date, and any and all warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor. Equity Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of an Equity Interest, for damages arising from the purchase or sale of such an Equity Interest, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.33    <u>Estate</u>. The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds. The property of the Estate shall be vested in the Reorganized Debtor upon the occurrence of the Confirmation Date of the Plan.

1.34    <u>Final Order</u>. An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.35    <u>General Unsecured Claim</u>. Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim. Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.36    <u>Highlands</u>. Highlands Union Bank.

1.37    <u>Judgment</u>. A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.38    <u>Macquarie</u>. Macquarie Corporation and Asset Funding Inc.

1.39   Net After Tax Cash Flow. Net income from the Reorganized Debtor's federal informational tax return (excluding any cancellation of debt income), less estimated federal and state income taxes based on the highest tax rate then in effect, less secured debt service, less distributions to the holders of Allowed Administrative Claims and Allowed Priority Claims.

1.40   Other Priority Claims. Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.41   Person. An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.42   Petition Date. July 26, 2019, the date of the commencement of this Chapter 11 Case.

1.43   Plan. This Chapter 11 Plan or, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.44   Pledged Property. That 2015 GMC Sierra 1500 and two 2015 Chevrolet Silverado 1500s titled in the Debtor's name and pledged as security for loans made to D.J. Cecile, Jr. and Jennifer Cecile by Highlands.

1.45   PNC. PNC Equipment Finance.

1.46   Priority Non-Tax Claim. Any Claim arising prior to the Petition Date entitled to priority in payment under sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.47   Priority Tax Claim. Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.48   Pro Rata Share. As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.49   Professional. Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.50   Rejected Agreement. Each unexpired lease or other executory contract of the Debtor which (i) is not an Assumed Agreement, (ii) has not been expressly assumed or rejected by order of the Bankruptcy Court prior to the Confirmation Date, or (iii) is not the subject of a pending motion to assume on the Effective Date.

1.51   Reorganized Debtor. The Debtor, as reorganized, discharged, and re-vested with all of the assets of the Estate pursuant to this Plan.

1.52    Schedules. The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor with the Bankruptcy Court in accordance with section 521(l) of the Bankruptcy Code.

1.53    Secured Claim. A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.54    Taxes. All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.55    Unsecured Claim. A Claim not secured by a charge against or interest in property in which the Estate has an interest, including, without limitation, any Unsecured Deficiency Claim, and/or any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.56    Unsecured Deficiency Claim. A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code of by stipulation, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.57    Voting Deadline. The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.58    Other Definitions. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan. The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS REGARDING ALLOWED ADMINISTRATIVE
## CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    ***Administrative Claims and Priority Tax Claims are Not Classified in this Plan***. Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan. The treatment of and consideration to be received by holders of

Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2    *Administrative Claims Bar Date*. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Debtor no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals, and to fees due under section 1930 of title 28 of the United States Code (which quarterly fees shall be paid pursuant to Section 11.1 of the Plan).

2.3    *Treatment of Administrative Claims*. Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

2.4    *Treatment of Priority Tax Claims*. Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in five (5) annual Cash payments on or before July 15 of each year following the Effective Date, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by section 511 of the Bankruptcy Code or otherwise as required by section 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim is paid in full within five (5) years from the Petition Date.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1    *Class 1: Secured Tax Claims*

3.1.1    *Classification*

Class 1 consists of all Allowed Secured Tax Claims.

### 3.1.2    *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor. Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Tax Claim and the Reorganized Debtor; or (c) in five (5) annual Cash payments on or before July 15 of each year following the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at such rate as required by section 511 of the Bankruptcy Code or otherwise as required by section l129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Secured Tax Claim is paid in full within five (5) years from the Petition Date.

### 3.1.3    *Impairment and Voting*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan. For purposes of voting, each holder of an Allowed Secured Tax Claim shall be considered to be the sole member of a separate Class.

## 3.2    *Class 2: Priority Non-Tax Claims*

### 3.2.1    *Classification*

Class 2 consists of all Allowed Priority Non-Tax Claims.

### 3.2.2    *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor. Each holder of an Allowed Priority Non-Tax Claim shall be paid the Allowed Amount of its Allowed Priority Non-Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtor; or (c) in five (5) annual Cash payments on or before July 15 of each year following the Effective Date, in an aggregate amount equal to such Allowed Priority Non-Tax Claim, such that the full amount of each Allowed Priority Non-Tax Claim is paid in full within five (5) years from the Petition Date.

### 3.2.3    *Impairment and Voting*

Class 2 is impaired by the Plan. The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3.3      *Class 3: Secured Claim of Bamboo*

    3.3.1        *Classification*

Class 3 consists of the Allowed Secured Claim of Bamboo, secured by a lien on real property.

    3.3.2        *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $265,000.00, less any payments made by the Debtor to Bamboo during the Chapter 11 Case. Distributions on account of Bamboo's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly principal payments of $1,500.00 per month through December 2026. The Reorganized Debtor will pay the balance of Bamboo's Allowed Class 3 Claim on or before January 1, 2027. Bamboo shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 3 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Bamboo shall be treated as a Class 12 Claim.

    3.3.3        *Impairment and Voting*

Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

3.4      *Class 4: Secured Claims of Capital Bank*

    3.4.1        *Classification*

Class 4 consists of the Allowed Secured Claims of Capital Bank, secured by certain equipment.

    3.4.2        *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate amount of $186,000.00, less any payments made by the Debtor to Capital Bank during the Chapter 11 Case. Payments on account of Capital Bank's secured claims shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Capital Bank shall retain its lien(s) with the priority thereof, as it (they) existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 4 Claims are satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Capital Bank shall be treated as a Class 12 Claim.

### 3.4.3        *Impairment and Voting*

Class 4 is impaired by the Plan. The holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

### 3.5        ***Class 5: Secured Claims of Caterpillar***

#### 3.5.1        *Classification*

Class 5 consists of the Allowed Secured Claims of Caterpillar, secured by certain equipment.

#### 3.5.2        *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate principal amount of $418,179.96, less any payments made by the Debtor to Caterpillar during the Chapter 11 Case. Payments on account of Caterpillar's secured claims shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty. Caterpillar shall retain its lien(s) with the priority thereof, as it (they) existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 5 Claims are satisfied as set forth herein. Any Allowed Unsecured Deficiency Claims of Caterpillar shall be treated as a Class 12 Claim.

#### 3.5.3        *Impairment and Voting*

Class 5 is impaired by the Plan. The holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

### 3.6        ***Class 6: First Secured Claim of Highlands***

#### 3.6.1        *Classification*

Class 6 consists of the Allowed Secured Claim of Highlands, secured by real property.

#### 3.6.2        *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $641,781.24, less any payments made by the Debtor to Highlands during the Chapter 11 Case. Payments on account of Highlands' secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 270 months with no prepayment penalty. Highlands shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 6 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Highlands shall be treated as a Class 12 Claim.

### 3.6.3     *Impairment and Voting*

Class 6 is impaired by the Plan. The holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

## 3.7     *Class 7: Second Secured Claim of Highlands*

### 3.7.1     *Classification*

Class 7 consists of the Allowed Secured Claims of Highlands, secured by the Pledged Property.

### 3.7.2     *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate amount of $38,318.68, less any payments made by the Debtor or the Borrowers to Highlands during the Chapter 11 Case. The Borrowers shall pay Highlands equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Highlands shall retain its lien(s) with the priority thereof, as it (they) existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 7 Claims are satisfied as set forth herein.

### 3.7.3     *Impairment and Voting*

Class 7 is impaired by the Plan. The holder of the Class 7 Claims is entitled to vote to accept or reject the Plan.

## 3.8     *Class 8: Secured Claim of Hodges*

### 3.8.1     *Classification*

Class 8 consists of the Allowed Secured Claim of Hodges secured by a judgment lien on certain real property.

### 3.8.2     *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $20,128.56. Payments on account of Hodge's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Hodges shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 8 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Hodges shall be treated as a Class 12 Claim.

3.8.3 *Impairment and Voting*

Class 8 is impaired by the Plan. The holder of the Class 8 Claim is entitled to vote to accept or reject the Plan.

3.9 **Class 9: Secured Claim of Macquarie**

3.9.1 *Classification*

Class 9 consists of the Allowed Secured Claim of Macquarie, secured by certain equipment.

3.9.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $125,000.00, less any payments made by the Debtor to Macquarie during the Chapter 11 Case. Payments on account of Macquarie's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Macquarie shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 9 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Macquarie shall be treated as a Class 12 Claim.

3.9.3 *Impairment and Voting*

Class 9 is impaired by the Plan. The holder of the Class 9 Claim is entitled to vote to accept or reject the Plan.

3.10 **Class 10: Secured Claim of PNC Bank**

3.10.1 *Classification*

Class 10 consists of the Allowed Secured Claim of PNC Bank, secured by certain equipment.

3.10.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $197,500.00, less any payments made by the Debtor to PNC Bank during the Chapter 11 Case. Payments on account of PNC Bank's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. PNC Bank shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 10 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of PNC Bank shall be treated as a

Class 12 Claim.

### 3.10.3      *Impairment and Voting*

Class 10 is impaired by the Plan. The holder of the Class 10 Claim is entitled to vote to accept or reject the Plan.

## 3.11      *Class 11: Secured Claim of Renasant Bank*

### 3.11.1      *Classification*

Class 11 consists of the Allowed Secured Claim of Renasant Bank, secured by certain equipment.

### 3.11.2      *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $140,000.00, less any payments made by the Debtor to Renasant Bank during the Chapter 11 Case. Payments on account of Renasant Bank's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Renasant Bank shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 11 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Renasant Bank shall be treated as a Class 12 Claim.

### 3.11.3      *Impairment and Voting*

Class 11 is impaired by the Plan. The holder of the Class 11 Claim is entitled to vote to accept or reject the Plan.

## 3.12      *Class 12: General Unsecured Claims*

### 3.12.1      *Classification*

Class 12 consists of all Allowed General Unsecured Claims.

### 3.12.2      *Treatment*

Holders of Allowed General Unsecured Claims will receive distributions equal to their Pro Rata Share of the Reorganized Debtor's Net After Tax Cash Flow for years 2020-2024. Said distributions will be paid in five (5) installments, on or before December 31st of years 2021-2025, respectively.

### 3.12.3    *Impairment and Voting*

Class 12 is impaired by the Plan. The holders of Class 12 Claims are entitled to vote to accept or reject the Plan.

### 3.13    ***Class 13: Secured Claims of Insiders and Affiliates***

### 3.13.1    *Classification*

Class 13 consists of the Allowed Secured Claims of D.J. Cecile, Jr. and Appalachian Capital, LLC, secured by certain real property.

### 3.13.2    *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate amount of $193,194.29. These Claims will be subordinated to the Claims in Classes 1-12 upon occurrence of the Effective Date. Following the satisfaction of all Claims in Classes 1-12 as set forth in the Plan, the Class 13 Claims shall be paid upon such terms as agreed upon by the Reorganized Debtor and the holders of the Class 13 Claims.

### 3.13.3    *Impairment and Voting*

Class 13 is impaired by the Plan. The holders of Allowed Class 13 Claims are entitled to vote to accept or reject the Plan.

### 3.14    ***Class 14: Unsecured Claims of Insiders***

### 3.14.1    *Classification*

Class 14 consists of the Allowed Unsecured Claims of D.J. Cecile, Jr., Danny Cecile, Sr., Jennifer Cecile, and Margaret Cecile.

### 3.14.2    *Treatment*

These Claims shall be treated as unsecured obligations of the Reorganized Debtor in the aggregate amount of $764,309.73. These Claims will be subordinated to the Claims in Classes 1-13 upon occurrence of the Effective Date. Following the satisfaction of all Claims in Classes 1-13 as set forth in the Plan, the Class 14 Claims shall be paid upon such terms as agreed upon by the Reorganized Debtor and the holders of the Class 14 Claims.

### 3.14.3    *Impairment and Voting*

Class 14 is impaired by the Plan. The holders of Allowed Class 14 Claims are entitled to vote to accept or reject the Plan.

3.15     ***Class 15: Equity Interests in the Debtor***

     3.15.1     *Classification*

Class 15 consists of the Equity Interests in the Debtor, held by Danny Cecile, Sr. (37.50%) and D.J. Cecile, Jr. (62.50%).

     3.15.2     *Treatment*

In return for a $35,000.00 equity contribution on the Effective Date, the holders of the Equity Interests in the Debtor will retain their interests in the Reorganized Debtor.

     3.15.3     *Impairment and Voting*

Class 15 is impaired by the Plan. The holders of the Class 15 Equity Interests are entitled to vote to accept or reject the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1     ***Impaired Classes Vote.*** Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2     ***Acceptance by Impaired Classes of Claims.*** Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

4.3     ***Designation of Classes Entitled to Vote.*** Classes 1-15 are impaired, and the holders of Claims and Interests in those Classes are entitled to vote on the Plan.

4.4     ***Nonconsensual Confirmation.*** With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, *and the filing of this Plan shall constitute a motion for such relief.*

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     5.1     ***Rejection.*** Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Confirmation Date, or previously been assumed by the Reorganized Debtor pursuant to an order of the Bankruptcy Court, or that is the subject of a pending motion to assume as of the Conformation Date, shall be deemed rejected by the Reorganized Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code.

5.2     *Effect of Confirmation Order on Executory Contracts and Unexpired Leases.*
Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute
an order of the Bankruptcy Court approving the rejection of all executory contracts and
unexpired leases which have not been previously assumed by the Reorganized Debtor pursuant
to an order of the Bankruptcy Court or that are not the subject of a pending motion to assume as
of the Confirmation Date. Any such rejection shall be effective as of the day before the Petition
Date, and all executory contracts and unexpired leases so rejected shall be conclusively deemed
burdensome to and not in the best interest of the Estate.

5.3     *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
Unexpired Leases Rejected Pursuant to the Plan.* Any Claims for damages arising from
rejection of an executory contract or unexpired lease under this Plan must be filed no later than
30 days after the Confirmation Date or be forever barred and unenforceable against the Debtor,
the Reorganized Debtor, and/or the Estate, and the holders of such Claims shall receive no
distributions under the Plan.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

6.1     *Distributions under the Plan.* The Reorganized Debtor or any distribution agent
the Reorganized Debtor may retain shall make all distributions to the holders of Allowed Claims
and Allowed Interests that are required under this Plan. Distributions to be made on the
Distribution Date shall be deemed actually made on the Distribution Date if made either (a) on
the Distribution Date or (b) as soon as practicable thereafter. If any litigation now pending is
resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the
successful litigant, then such party shall become a creditor, and shall share in distributions to the
appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day
other than a Business Day, such distribution shall instead be made, without the accrual of any
interest, on the immediately succeeding Business Day, but shall be deemed to have been made
on the date due.

6.2     *Delivery of Distributions.* Distributions to a holder of an Allowed Claim or
Allowed Interest shall be made at the address of such holder as indicated on the Debtor's
records. In the event that any such distribution is returned as undeliverable, the Reorganized
Debtor shall use reasonable efforts to determine the current address of the applicable holder, and
no distribution to such holder shall be made unless and until the Reorganized Debtor has
determined such then current address, provided, however, that if any distribution remains
unclaimed after the first anniversary after distribution, such distribution shall be deemed
unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall become vested
in the Reorganized Debtor. In such event, the Claim of the holder for such distribution shall no
longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to
such distribution under this Plan pursuant to section 1143 of the Bankruptcy Code, shall have no
further claim or right thereto, and shall not participate in any further distributions under this Plan
with respect to such Claim. Checks issued by the Reorganized Debtor in respect of Allowed
Claims shall be null and void if not negotiated within one hundred and twenty (120) days after
the date of issuance thereof.

6.3    ***Third-Party Agreements.*** Distributions to Creditors hereunder will not affect the right of any Entity to levy, garnish, attach, or employ other legal process with respect to such distributions. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

6.4    ***Manner of Payment under the Plan.*** At the option of the Reorganized Debtor, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5    ***No Fractional Distributions.*** No fractional dollars shall be distributed under the Plan. For purposes of distributions, Cash distributions may be rounded up or down, as applicable, to the nearest whole dollar.

6.6    ***Withholding and Reporting.*** The Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.1    ***New Value Contribution.*** DJ Cecile, Jr. and Danny Cecile, Sr. hold 100% of the Equity Interests in the Debtor. In return for 100% of the Equity Interests in the Reorganized Debtor, the Ceciles will make a new equity contribution of $35,000.00 to the Reorganized Debtor on or before the Effective Date.

7.2    ***Distributions of Available Funds.*** The Debtor anticipates that all Allowed Administrative Claims, if any, will be paid in full upon the Effective Date, unless agreed otherwise by the Debtor and the holder of such a Claim. Periodic payments to the holders of Allowed Priority Claims and Allowed Secured Claims will be funded from the post-confirmation operations of the Reorganized Debtor. Distributions to the holders of Allowed General Unsecured Claims will be paid from the Reorganized Debtor's Net After Tax Cash Flow for the years 2020-2024. Such distributions will be paid in five installments, on or before December 31st of years 2021 through 2025, respectively. The Reorganized Debtor shall have discretion to retain a reasonable portion of such monies to fund the Disputed Claim Reserve described in Section 8.3 of this Plan to account for Disputed Claims, if any.

7.3    ***Authority to Act Following Confirmation Date.*** Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.4 ***Authority to Act Following Effective Date.*** The Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

7.5 ***Status of Liens of Secured Tax Claims and Other Lien Claimants.*** All existing liens held by any Class or Classes on the Debtor's assets shall retain the same validity, priority and extent that existed on the Petition Date as specifically set forth in Article 3 of the Plan, subject to section 522 of the Bankruptcy Code. All other liens and encumbrances, if any, in the Debtor's assets not set forth in Article 3 of the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

7.6 ***Effectuating Documents and Further Transactions.*** The Debtor and the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtor and the Reorganized Debtor, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

## ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

8.1 ***Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.*** The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the exclusive right to object to the allowance, amount, or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or Reorganized Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or Reorganized Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor without notice upon ex *parte* motion.

8.2 ***Estimation of Disputed Claims and Interests.*** The Debtor and, after the Effective Date, the Reorganized Debtor, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor has previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3    ***Establishment of Disputed Claims Reserve.*** On or before the date that is 120 days after the Effective Date, the Reorganized Debtor shall establish the Disputed Claims Reserve in the event it (or the Debtor) objects to the allowance, amount or classification of any Claims or Interests.

8.4    ***No Distribution on Account of Disputed Claims and Interests.*** Notwithstanding anything else contained in this Plan, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order. The Reorganized Debtor shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims and Allowed Interests in a particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims and Interests were ultimately to be allowed in full by Final Order.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1    ***Vesting of Assets and Retained Causes of Action.*** On the Confirmation Date, pursuant to section 1141(b) of the Bankruptcy Code, all Assets of the Debtor in Possession shall vest in the Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after the Effective Date, the Reorganized Debtor may operate its business and may own, use, acquire and dispose of Assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed. Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all claims and Causes of Action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and Causes of Action specified in the Plan or any Plan exhibit.

9.2    ***Binding Effect.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan. To the extent applicable, the filing of this Plan shall constitute a motion to value a secured Creditor's interest in its collateral pursuant to section 506(a) of the Bankruptcy Code (subject to the Reorganized Debtor's right to file any objection to the validity, priority, or extent of any secured Creditor's lien(s)).

9.3    ***Discharge of the Debtor.*** Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the Assets, properties, or Interests in, or property of the Debtor, the Debtor in Possession or

the Reorganized Debtor of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtor, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and distributions expressly provided for or due under this Plan and (b) Claims and Equity Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Persons are precluded and forever barred from asserting against the Debtor, the Debtor in Possession, the Reorganized Debtor, or their assets, properties, or interests in or property of the Debtor, the Debtor in Possession, or the Reorganized Debtor of any nature whatsoever, any Claims or interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Equity Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

9.4    ***Indemnification Obligations.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of this Plan, the obligations of the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtor, shall be deemed to be and treated as executory contracts that are assumed by the Debtor and assigned to the Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan. Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

9.5    ***Term of Certain Injunctions.*** Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter, including, but not limited to, the automatic stay provided by section 362 of the Bankruptcy Code; *provided that* any holder of an Allowed Secured Claim whose collateral is surrendered to it pursuant to the terms of this Plan, or any holder of an Allowed Secured Claim whose collateral is retained by the Reorganized Debtor pursuant to the terms of this Plan but with respect to which there is a post-confirmation default by the Reorganized Debtor in its obligations hereunder, shall not be enjoined nor prohibited from

exercising its *in rem* rights as to such collateral under applicable state law following occurrence of the Effective Date, provided that such Creditor first gives the Reorganized Debtor thirty (30) days' written notice, pursuant to section 11.2 of this Plan, of such default and right to cure the same. In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it deems necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

9.6    ***No Successor Liability.*** Except as otherwise stated in the Plan or Confirmation Order, neither the Debtor nor the Reorganized Debtor will have any responsibilities for any liabilities or obligations of the Debtor or any of the Debtor's past or present subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of the Debtor's past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtor shall have no successor or transferee liability of any kind or character, for any Claims; provided, however, that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

9.7    ***Preservation of All Causes of Action Not Expressly Settled or Released.*** Without limiting or restricting any other provisions of this Plan, including but not limited to Section 9.1, unless a Claim, cause of action, objection, defense, or other right (whether legal or equitable) against a Creditor or other Person is expressly and specifically waived, released, compromised, or settled in this Plan or any Final Order, the Reorganized Debtor expressly reserves such Claim, cause of action, objection, defense, or other right (whether legal or equitable) for adjudication or pursuit by the Reorganized Debtor after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches shall apply to such Claim, cause of action, objection, defense, or other right (whether legal or equitable) upon or after the Confirmation Date or Effective Date of the Plan. The Reorganized Debtor expressly reserves the right to pursue or adopt any Claims, causes of action, objections, defenses, or other rights (whether legal or equitable)of the Debtor or the Debtor in Possession, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order against any Person, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such Claims, causes of action, objections, defenses, or other rights (whether legal or equitable) under 11 U.S.C. § 1123(b)(3)(B).

Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract, or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised, or settled in this Plan or any Final Order, be the subject of an action, claim, motion, objection, or demand after the Effective Date, whether or not (a) such Person has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Person's proof of claim

has been objected to, (c) such Person's Claim was included in the Debtor's Schedules, or (d) such Person's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

10.1    *Conditions to Occurrence of Effective Date of Plan.* The "effective date of the plan," as used in section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon the earlier of: (a) the Business Day that is sixty (60) days from entry of the Confirmation Order; or (b) upon satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtor.

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court and shall have become a Final Order.

10.1.2 All Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by any applicable non-Debtor parties in form and substance satisfactory to the Debtor.

10.1.3 All actions, Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, shall have been executed by the Debtor.

10.1.4 All fees and expenses due to or incurred by Professionals for the Debtor through the Effective Date not previously paid pursuant to interim or final orders shall have been paid into and shall be held in trust, free and clear of liens, Claims, and encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

10.1.5 All payments due on the Effective Date shall have been made.

10.2    *Filing of Notice of Effective Date.* Within seven (7) Business Days of the occurrence of the Effective Date, the Reorganized Debtor shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtor in Possession and, if different, counsel to the Reorganized Debtor in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtor and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

10.3    *Revocation of Confirmation Order or Withdrawal of Plan.* The Debtor may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur as set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically

revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and Equity Interests shall remain unchanged, all of the Debtor's rights and claims against all Persons shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1    ***Payment of Statutory Fees.*** All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Reorganized Debtor, as, when and in the amount as required by applicable law. The Bankruptcy Administrator shall not be obligated to file an application authorizing the payment of all such fees.

11.2    ***Notice.*** Any notice required or permitted to be provided to the Debtor or Reorganized Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

Radford Quarries, Inc.
c/o Richard S. Wright
Moon Wright & Houston, PLLC
121 West Trade Street, Suite 1950
Charlotte, NC 28202

11.3    ***Headings.*** The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.4    ***Governing Law.*** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.5    ***Additional Documents.*** The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in its reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.6    ***Compliance with Tax Requirements.*** In connection with this Plan, the Debtor and the Reorganized Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.7    ***Exemption from Transfer Taxes.*** Pursuant to section 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

11.8    ***Further Authorizations.*** The Debtor, and after the Effective Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.9    ***Successors and Assigns.*** The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Person.

11.10    ***Modification and Amendment of the Plan.*** Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Reorganized Debtor.

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1    ***Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor are parties or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2    ***Causes of Action.*** To determine any and all Claims, causes of action, objections, defenses, or other rights (whether legal or equitable), including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date.

12.3 ***Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.*** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4 ***Enforcement/Modification of Plan.***

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in this Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by section 1142 of the Bankruptcy Code.

12.5 ***Compensation of Professionals.*** To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in section 1129(a)(4) of the Bankruptcy Code.

12.6 ***Settlements.*** To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Reorganized Debtor.

12.7 ***Taxes.*** To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor or Debtor in Possession may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

12.8    ***506(b), (c) Claims.*** To determine the amounts, if any, of the reasonable fees, costs and other charges payable under sections 506(b) and/or (c) of the Bankruptcy Code.

12.9    ***Specific Purposes.*** To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10    ***Final Decrees.*** To enter an order or final decree closing the Chapter 11 Case.

Dated: Charlotte, North Carolina
      November 26, 2019

Respectfully submitted,

**RADFORD QUARRIES, INC.**

By:    */s/ DJ Cecile, Jr.*
          DJ Cecile, Jr., President


**MOON WRIGHT & HOUSTON, PLLC**

By:
          */s/ Richard S. Wright*
          Richard S. Wright (Bar No. 24622)
          Caleb Brown (Bar No. 41131)
          121 West Trade Street, Suite 1950
          Charlotte, North Carolina 28202
          Telephone: (704) 944-6560
          *Counsel for the Debtor*