IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Statesville Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **RADFORD QUARRIES, INC.** | ) | Case No. 19-50454 |
| | ) | |
| | ) | |
| Debtor. | ) | |

## DISCLOSURE STATEMENT
### (Relating to Plan of Reorganization)


Dated: Charlotte, North Carolina
      November 26, 2019

Moon Wright & Houston, PLLC
Richard S. Wright (Bar No. 24622)
Caleb Brown (Bar No. 41131)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for Debtor*

# ARTICLE I
## INTRODUCTION AND OVERVIEW

No representations concerning the Debtor, its business, or its future operations, other than those specifically set forth herein, have been authorized by the Debtor.

## A.      GENERAL

On July 26, 2019, Radford Quarries, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"). The Debtor continues in possession of its properties and the management of its business as a "debtor in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Honorable Laura T. Beyer, United States Bankruptcy Judge, has presided over this chapter 11 case (the "Chapter 11 Case") since its inception.

Contemporaneously herewith, the Debtor has filed its Plan of Reorganization (the "Plan"). The Plan sets forth the proposed reorganization of the Debtor's chapter 11 estate (the "Estate") and the distribution of recoveries to creditors (collectively, the "Creditors") of the Estate. A copy of the Plan is attached as Exhibit A to this Disclosure Statement (the "Disclosure Statement").

Pursuant to section 1126 of the Bankruptcy Code, the Debtor is soliciting acceptances of the Plan from the Classes of Claims entitled to vote on the Plan. This Disclosure Statement is submitted pursuant to section 1125 of the Bankruptcy Code in order to provide information of the kind necessary to enable a hypothetical reasonable investor to make an informed judgment in the exercise of his/her/its right to vote on the Plan.

## B.      PURPOSE OF DISCLOSURE STATEMENT

The Debtor provides this Disclosure Statement in order to permit eligible parties to make an informed decision in voting to accept or reject the Plan. The Disclosure Statement is presented to all Creditors in order to satisfy the requirements of section 1125 of the Bankruptcy Code. Section 1125 requires a disclosure statement to provide information sufficient to enable a hypothetical and reasonable investor, typical of the Creditors, to make an informed judgment whether to accept or reject the Plan. This Disclosure Statement may not be relied upon for any purpose other than that described above. This disclosure statement and the plan are an integral package, and they must be considered together for the reader to be adequately informed.

No representations concerning the Debtor or its property are authorized by the Debtor other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance of the Plan other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the Debtor, who shall in turn deliver such information to the Bankruptcy Court for such action as may be appropriate.

The information contained in this Disclosure Statement, including the information contained in any exhibits attached hereto, has not been subject to an audit or independent review. Accordingly, the Debtor is unable to warrant or represent that the information concerning the Debtor or its financial condition is accurate or complete. Any projected information contained in this Disclosure Statement has been presented for illustrative purposes only. Because of the uncertainty and risk factors involved, the Debtor's actual results may not be as projected.

Although an effort has been made to be as accurate as possible under the circumstances, the Debtor does not warrant or represent that the information contained in this Disclosure Statement is correct. The Disclosure Statement contains only a summary of the Plan. Each creditor who is entitled to vote on the Plan is urged to review the Plan prior to casting its vote.

The statements contained in this Disclosure Statement are made as of the date of the Disclosure Statement unless another time is specified. The delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts set forth since the date of the Disclosure Statement. Schedules of the assets and liabilities of the Debtor as of the Petition Date (collectively, as may be amended from time to time, the "Schedules") are on file with the Clerk of the Bankruptcy Court and may be inspected by interested parties during regular business hours.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities law or other applicable nonbankruptcy law. Entities holding or trading in or otherwise purchasing, selling, or transferring claims against, interests in, or securities of the Debtor should evaluate this Disclosure Statement only in light of the purpose for which it was prepared. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission nor has the commission passed upon the accuracy or adequacy of the statements contained herein.

The Honorable Laura T. Beyer will hold a hearing on confirmation of the Plan (the "Confirmation Hearing") at the United States Bankruptcy Court, U.S. Courthouse, 200 West Broad Street, Statesville, North Carolina 28677, on _____ __, 2020 at __:00 _.m. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the Creditors, and will review the ballot reports concerning votes cast for acceptance and rejection of the Plan.

## C.      OVERVIEW OF THE DEBTOR AND THE PLAN

### 1.      Description of the Debtor

Incorporated in 1992, the Debtor is a closely held business that operates a stone materials production and sales business from locations in Ashe, Avery, Watauga, and Wilkes Counties in North Carolina. The Debtor also operates one quarry located in Johnson County, Tennessee.

### 2.      Reasons for the Chapter 11 Filing

The Debtor lost revenue in 2018 as a result of record high levels of rainfall, which significantly affected the Debtor's ability to mine and produce crushed stone. In addition, medical issues incapacitated Danny Cecile, Sr., the long-time manager of the Debtor's operations. D.J. Cecile, Jr., who worked for the Debtor primarily in sales and administration, was forced to take the lead role in directing mining operations. As a result, the Debtor saw additional diminished productions levels while D.J. Cecile, Jr. learned the nuances of his new role. Due to its diminished revenues, the Debtor became unable to meet its secured debt service requirements. The Debtor filed its Chapter 11 Case to prevent repossession of its equipment by secured creditors, to restructure its debt obligations, and to streamline the settlement of claims.

### 3.      The Debtor's Proposed Reorganization Pursuant to the Plan

The Debtor anticipates that all Allowed Administrative Claims, if any, will be paid in full upon the Effective Date, unless agreed otherwise by the Debtor and the holder of such a Claim. Periodic

payments to the holders of Allowed Priority Claims and Allowed Secured Claims will be funded from the post-confirmation operations of the Reorganized Debtor. Distributions to the holders of Allowed General Unsecured Claims will be paid from the Reorganized Debtor's Net After Tax Cash Flow for the years 2020-2024. Such distributions will be paid in five installments, on or before December 31st of years 2021 through 2025, respectively. Danny Cecile, Sr. and D.J. Cecile, Jr. collectively hold 100% of the Equity Interests in the Debtor. In return for a new equity contribution of $35,000.00 on the Effective Date, the Ceciles will retain 100% of the Equity Interests in the Reorganized Debtor.  D.J. Cecile, Jr. will continue to be employed by the Reorganized Debtor with a salary of $4,000 per month (subject to annual cost of living increases, as forecast in the attached pro forma income projections).

A more detailed summary of the Plan's provisions is set forth in Article III, below.

The Debtor reserves the right to resort to the "cram down" provisions of section 1129 of Title 11, and to provide the opportunity to new and existing equity holders to contribute sufficient equity to insure the success of the Reorganized Debtor.

## D.    DISTRIBUTIONS UNDER THE PLAN

Summaries of the classification and treatment of Claims under the Plan, and the distributions that holders of Claims may expect to receive under the Plan, are set forth in Article III of this Disclosure Statement below. The amounts listed are merely the Debtor's estimates based on information available as of the filing of this Disclosure Statement. The actual amounts could be substantially different, causing the ultimate distributions to creditors to be significantly higher or lower than estimated.

Creditors and other parties in interest are urged to review the contents of the Plan itself, which is attached as Exhibit A to this Disclosure Statement, in its entirety. To the extent that any provisions of this Disclosure Statement are inconsistent with the provisions of the Plan, the terms of the Plan shall control; provided, however, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.

For a more detailed description, other significant terms, and provisions of the Plan, please refer to Article III below and the Plan itself.

## E.    CREDITORS ENTITLED TO VOTE ON THE PLAN

Holders of Claim or Interests in Classes 1-15 may be or are impaired by the Plan and, as such, the Debtor is soliciting votes from holders of Allowed Claim in these Classes as set forth in Article 3 of the Plan.

The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met by the Debtor. However, the Debtor may seek to "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code on any Class of claimants that vote to reject the Plan. (For more information on "cram down," please refer to Article V, Section C below). The requisite majority for confirmation of the Plan by a particular Class without "cram down" is acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number based on Allowed Claims that are actually voted.

**F.    INSTRUCTIONS REGARDING VOTING, CONFIRMATION, AND OBJECTIONS TO CONFIRMATION**

*1.    Voting Instructions*

Before voting, you should read this Disclosure Statement and its exhibits, including the Plan and its exhibits, in their entirety. Ballots must be received by the respective parties no later than _____, __ 2020. You may vote on the Plan by completing and mailing the enclosed Ballots to: Moon Wright & Houston, PLLC, Attention: Richard S. Wright, 121 West Trade Street, Suite 1950, Charlotte, North Carolina 28202.

You should use the ballots sent to you with this Disclosure Statement to cast your votes for or against the Plan. You may NOT cast ballots or votes orally. In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the time designated in the ballot accompanying this Disclosure Statement. If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot with this Disclosure Statement, you may obtain a ballot by contacting Moon Wright & Houston, PLLC at the address shown above.

Only holders of Allowed Claims in impaired Classes are entitled to vote on the Plan. In addition, the record date of all Claims against the Debtor for voting purposes shall be the Petition Date. Persons holding Claims transferred after such date will not be permitted to vote on the Plan. An impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims in the Class that are actually voted are cast in favor of the Plan. Subject to the terms of the Plan, Claimants who do not vote are counted as having voted for the Plan. Pursuant to the provisions of section 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith. A Creditor's failure to vote on the Plan will not affect such Creditor's right to a Distribution under the Plan.

If the voting members of an impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount of Allowed Claims in that Class and one-half (1/2) in number of Allowed Claims actually voted in that Class, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Estate was liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Court established January 15, 2020 as the deadline by which all proofs of Claim must be filed in this Chapter 11 Case. The Debtor may dispute proofs of Claim that have been filed or that the Debtor listed as disputed in its Schedules filed with the Bankruptcy Court. Persons whose Claims are disputed may vote on, or otherwise participate in, distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. The Schedules, which list the Claims and whether such Claims are disputed, can be inspected at the Office of the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, Charles Jonas Federal Building, 401 West Trade Street, Room 111, Charlotte, North Carolina.

Whether or not a Claimant votes on the Plan, such Persons will be bound by the Plan, including the terms and treatment of Claims set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed-down" and confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does not necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of distribution under the Plan.

### 2. Confirmation of the Plan

Once it is determined which impaired Classes, if any, have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in section 1129(a) of the Bankruptcy Code satisfied. These are complex statutory provisions, and the preceding paragraphs are not intended to be a complete summary of the law. If you do not understand any of these provisions, please consult with an attorney.

IF ALL CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO RELY UPON THE "CRAM DOWN" PROVISION OF SECTION 1129(b) OF THE BANKRUPTCY CODE.

The Bankruptcy Court may confirm the Plan, even if all impaired Classes do not accept the Plan, if the Bankruptcy Court finds that certain additional conditions are met. Accordingly, if the Plan is not accepted by the requisite amount of Claims in their respective impaired Classes, the Debtor will seek confirmation of the Plan as to such non-accepting Classes pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code is generally referred to as the "cram down" provision. The Bankruptcy Court may confirm a Plan over the objection of a non-accepting Class if the Plan satisfies one of the alternative requirements of section 1129(b)(2)(A). The Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class if the non-accepting members of the Class will receive the full value of their Claims, or, if the non-accepting members of the Class stand to receive less than full value, no Classes of junior priority will receive anything on account of their respective Claims.

### 3. Objections to Confirmation

Any objections to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court and served upon (a) Richard S. Wright, Moon Wright & Houston, PLLC, 121 West Trade Street, Suite 1950, Charlotte, North Carolina 28202; and (b) Shelley K. Abel, United States Bankruptcy Administrator, 402 West Trade Street, Suite #200, Charlotte, North Carolina 28202, in such a manner as will cause such objections to be filed with the Bankruptcy Court and received by the aforementioned parties no later than _____ __, 2020.

### 4. Confirmation Hearing

A hearing on confirmation of the Plan is scheduled before the Honorable Laura T. Beyer, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of North Carolina, at the United States Bankruptcy Court, U.S. Courthouse, 200 West Broad Street, Statesville, North Carolina 28677, on _____ __, 2020 at __:00 _.m. Announcement of the adjournment or continuance of such hearing, if any, may be made in writing or in open court. No further written notice is required to be sent to claimants, interest holders, or other parties in interest.

## ARTICLE II
## INFORMATION REGARDING THE CHAPTER 11 CASE

## A. COMMENCEMENT OF THE CHAPTER 11 CASE

### 1. Filing of the Petition

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 26, 2019.

### 2.    No Unsecured Creditors Committee Appointed

An Official Committee of Unsecured Creditors was not appointed in this Chapter 11 Case. Likewise, neither a trustee nor an examiner has been appointed by the Bankruptcy Court.

### 3.    Continuation of Business after Filing

The Debtor has continued to manage its business and affairs as debtor in possession, subject to the oversight of the Bankruptcy Administrator and the Bankruptcy Court. Certain actions of the Debtor during the Chapter 11 Case, including all transactions outside of the ordinary course of business, if any, were taken only after first requesting and receiving authorization from the Bankruptcy Court. Upon the filing of the chapter 11 petition, substantially all claims against the Debtor that existed prior to the Petition Dates became subject to the automatic stay provisions under section 362 of the Bankruptcy Code while the Debtor continued operation of its business and affairs as a debtor in possession. These pre-petition claims may arise from the determination by the Bankruptcy Court of allowed claims for contingent liabilities and other disputed amounts.

## B.    SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### 1.    Filing of Schedules

The Debtor filed its Schedules of Assets and Liabilities, and its Statement of Financial Affairs on August 23, 2019 (the "Schedules").

### 2.    Retention of Professionals by the Debtor

The Debtor is represented by the firm of Moon Wright & Houston, PLLC as bankruptcy counsel in connection with its Chapter 11 Case.

### 3.    Bar Date for Filing of Claims

The Bankruptcy Court established January 15, 2020 (the "Claims Bar Date") as the deadline by which all proofs of Claim must be filed in this Chapter 11 Case. The Clerk of the Bankruptcy Court transmitted notices of the Bar Date to all known actual or potential claimants and informed them of their need to file a proof of Claim on or before the Claims Bar Date.

## ARTICLE III
## THE DEBTOR'S PLAN OF REORGANIZATION

The following is a summary of the provisions of the Plan and, accordingly, is not as complete as the full text of the Plan that accompanies this Disclosure Statement. The Plan itself, attached as <u>Exhibit A</u> hereto, should be read in its entirety.

## A.    SUMMARY OF PAYMENT PROVISIONS OF THE PLAN

### 1.    Impairment of Claims

A class of claims or interests is deemed "impaired" under a chapter 11 plan unless, in general, the rights of the holders of the claims or interests of such class are not altered or, with respect to interests, the holders receive cash equal to the greater of (a) any liquidation preference or (b) the redemption price, if either is applicable. Pursuant to section 1129(b) of the Bankruptcy Code, any class deemed to be impaired

must accept the plan by the requisite majority before the plan can be confirmed, unless the Bankruptcy Court finds that the plan is fair and equitable and does not discriminate unfairly with respect to each class that is impaired and has not accepted the plan.

### 2. *Treatment of Claims*

The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan will be in full settlement, release, and discharge of their respective Allowed Claims relating to the Debtor and other Persons, as applicable, as specified in the Plan.

## B.      CLASSIFIED CLAIMS UNDER THE PLAN

The Plan divides the Claims against the Debtor into various Classes and designations. Below is a description of the general Classes and designations of claims against the Debtor and the corresponding treatment thereof under the Plan. Allowed Administrative Claims and Allowed Priority Tax Claims are not designated as classes of Claims for purposes of the Plan and pursuant to sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.

All amounts listed for each Class of Claims are merely estimates, and are subject to change through the Debtor's Claims review and objection process. With respect to Secured Claims, the collateral values asserted by the Debtor, absent agreement with an affected Creditor, are based upon the Debtor's informed estimate of the fair market value of the collateral.

All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[Remainder of Page Intentionally Left Blank]

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Allowed Administrative Claims*<br><br>An Allowed Administrative Claim is any cost and expense of administration of the Chapter 11 Case entitled to priority in payment under sections 507(a)(1) and (a)(2) of the Bankruptcy Code, or as may be allowed by Final Order of the Bankruptcy Court.<br><br>The Debtor estimates that, after completion of the claim reconciliation process, and excluding any cure amounts related to assumption of executory contracts and leases, the total amount of Allowed Administrative Claims will be: (i) fees due under 28 U.S.C. § 1930 in the approximate amount of $975.00, and (ii) fees of professionals employed by the Debtor in the approximate amount of $35,000.00. | *Not Classified Under the Plan; Unimpaired*<br><br>Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due. | 100% |
| *Allowed Priority Tax Claims*<br><br>An Allowed Priority Tax Claim is any Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.<br><br>The Debtor estimates that Allowed Priority Tax Claims will total $42,240.48. | *Not Classified Under the Plan; Unimpaired*<br><br>Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in five (5) annual Cash payments on or before July 15 of each year following the Effective Date, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by section 511 of the Bankruptcy Code or otherwise as required by section l129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim is paid in full within five (5) years from the Petition Date. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 1: Secured Tax Claims*<br><br>Class 1 consists of all Allowed Secured Tax Claims. | *Impaired Under the Plan; Entitled to Vote*<br><br>These Claims shall be treated as secured obligations of the Reorganized Debtor. Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Tax Claim and the Reorganized Debtor; or (c) in five (5) annual Cash payments on or before July 15 of each year following the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at such rate as required by section 511 of the Bankruptcy Code or otherwise as required by section l129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Secured Tax Claim is paid in full within five (5) years from the Petition Date. | 100% |
| *Class 2: Priority Non-Tax Claims*<br><br>Class 2 consists of all Allowed Priority Non-Tax Claims. | These Claims shall be treated as secured obligations of the Reorganized Debtor. Each holder of an Allowed Priority Non-Tax Claim shall be paid the Allowed Amount of its Allowed Priority Non-Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtor; or (c) in five (5) annual Cash payments on or before July 15 of each year following the Effective Date, in an aggregate amount equal to such Allowed Priority Non-Tax Claim, such that the full amount of each Allowed Priority Non-Tax Claim is paid in full within five (5) years from the Petition Date. | 100% |

| | | |
|---|---|---|
| *Class 3: Secured Claim of Bamboo*<br><br>Class 3 consists of the Allowed Secured Claim of Bamboo, secured by a lien on real property | *Impaired Under the Plan; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $265,000.00, less any payments made by the Debtor to Bamboo during the Chapter 11 Case. Distributions on account of Bamboo's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly principal payments of $1,500.00 per month through December 2026. The Reorganized Debtor will pay the balance of Bamboo's Allowed Class 3 Claim on or before January 1, 2027. Bamboo shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 3 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Bamboo shall be treated as a Class 12 Claim. | 100% |
| *Class 4: Secured Claim of Capital Bank*<br><br>Class 4 consists of the Allowed Secured Claim of Capital Bank, secured by certain equipment. | *Impaired Under the Plan; Entitled to Vote*<br><br>These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate amount of $186,000.00, less any payments made by the Debtor to Capital Bank during the Chapter 11 Case. Payments on account of Capital Bank's secured claims shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Capital Bank shall retain its lien(s) with the priority thereof, as it (they) existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 4 Claims are satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Capital Bank shall be treated as a Class 12 Claim. | 100% |

| | | |
|---|---|---|
| *Class 5: Secured Claim of Caterpillar*<br><br>Class 5 consists of the Allowed Secured Claims of Caterpillar, secured by certain equipment. | *Impaired Under the Plan; Entitled to Vote*<br><br>These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate principal amount of $418,179.96, less any payments made by the Debtor to Caterpillar during the Chapter 11 Case. Payments on account of Caterpillar's secured claims shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty. Caterpillar shall retain its lien(s) with the priority thereof, as it (they) existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 5 Claims are satisfied as set forth herein. Any Allowed Unsecured Deficiency Claims of Caterpillar shall be treated as a Class 12 Claim. | 100% |
| *Class 6: First Secured Claim of Highland*<br><br>Class 6 consists of the Allowed Secured Claim of Highlands, secured by certain real property. | *Impaired Under the Plan; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $641,781.24, less any payments made by the Debtor to Highlands during the Chapter 11 Case. Payments on account of Highlands' secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 270 months with no prepayment penalty. Highlands shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 6 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Highlands shall be treated as a Class 12 Claim. | 100% |

| | | |
|---|---|---|
| *Class 7: Second Secured Claim of Highlands*<br><br>Class 7 consists of the Allowed Secured Claims of Highlands, secured by the Pledged Property. | *Impaired Under the Plan; Entitled to Vote*<br><br>These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate amount of $38,318.68, less any payments made by the Debtor or the Borrowers to Highlands during the Chapter 11 Case. The Borrowers shall pay Highlands equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Highlands shall retain its lien(s) with the priority thereof, as it (they) existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 7 Claims are satisfied as set forth herein. | 100% |
| *Class 8: Third Secured Claim of Hodges*<br><br>Class 8 consists of the Allowed Secured Claim of Hodges secured by a judgment lien on certain real property. | *Impaired Under the Plan; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $20,128.56. Payments on account of Hodge's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Hodges shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 8 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Hodges shall be treated as a Class 12 Claim. | 100% |
| *Class 9: Secured Claim of Macquarie*<br><br>Class 9 consists of the Allowed Secured Claim of Macquarie, secured by certain equipment. | *Impaired Under the Plan; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $125,000.00, less any payments made by the Debtor to Macquarie during the Chapter 11 Case. Payments on account of Macquarie's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Macquarie shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 9 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Macquarie shall be treated as a Class 12 Claim. | 100% |

| | | |
|---|---|---|
| *Class 10: Secured Claim of PNC Bank*<br><br>Class 10 consists of the Allowed Secured Claim of PNC Bank, secured by certain equipment. | *Impaired Under the Plan; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $197,500.00, less any payments made by the Debtor to PNC Bank during the Chapter 11 Case. Payments on account of PNC Bank's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. PNC Bank shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 10 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of PNC Bank shall be treated as a Class 12 Claim. | 100% |
| *Class 11: Secured Claim of Renasant Bank*<br><br>Class 11 consists of the Allowed Secured Claim of Renasant Bank, secured by certain equipment. | *Impaired Under the Plan; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $140,000.00, less any payments made by the Debtor to Renasant Bank during the Chapter 11 Case. Payments on account of Renasant Bank's secured claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.0% per annum, over 60 months with no prepayment penalty. Renasant Bank shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 11 Claim is satisfied as set forth herein. Any Allowed Unsecured Deficiency Claim of Renasant Bank shall be treated as a Class 12 Claim. | 100% |
| *Class 12: General Unsecured Claims*<br><br>Class 12 consists of all Allowed General Unsecured Claims, in the approximate amount of $947,293.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>Holders of Allowed General Unsecured Claims will receive distributions equal to their Pro Rata Share of the Reorganized Debtor's Net After Tax Cash Flow for years 2020-2024. Said distributions will be paid in five (5) installments, on or before December 31st of years 2021-2025, respectively. | 29% |

| | | |
|---|---|---|
| *Class 13: Secured Claims of Insiders and Affiliates*<br><br>Class 13 consists of the Allowed Secured Claims of D.J. Cecile, Jr. and Appalachian Capital, LLC, secured by certain real property. | *Impaired Under the Plan; Entitled to Vote*<br><br>These Claims shall be treated as secured obligations of the Reorganized Debtor in the aggregate amount of $193,194.29. These Claims will be subordinated to the Claims in Classes 1-12 upon occurrence of the Effective Date. Following the satisfaction of all Claims in Classes 1-12 as set forth in the Plan, the Class 13 Claims shall be paid upon such terms as agreed upon by the Reorganized Debtor and the holders of the Class 13 Claims. | 0.0% |
| *Class 14: Unsecured Claims of Insiders*<br><br>Class 14 consists of the Allowed Unsecured Claims of D.J. Cecile, Jr., Danny Cecile, Sr., Jennifer Cecile, and Margaret Cecile. | *Impaired Under the Plan; Entitled to Vote*<br><br>These Claims shall be treated as unsecured obligations of the Reorganized Debtor in the aggregate amount of $764,309.73. These Claims will be subordinated to the Claims in Classes 1-13 upon occurrence of the Effective Date. Following the satisfaction of all Claims in Classes 1-13 as set forth in the Plan, the Class 14 Claims shall be paid upon such terms as agreed upon by the Reorganized Debtor and the holders of the Class 14 Claims. | 0.0% |
| *Class 15: Equity Interests of the Debtor*<br><br>Class 15 consists of the Equity Interests in the Debtor, held by Danny Cecile, Sr. (37.50%) and D.J. Cecile, Jr. (62.50%). | *Impaired Under the Plan; Entitled to Vote*<br><br>In return for a $35,000.00 equity contribution upon the Effective Date, the holders of the Equity Interests in the Debtor will retain their interests in the Reorganized Debtor. | N/A |

[Remainder of Page Intentionally Left Blank]

# ARTICLE IV
## OTHER PROVISIONS OF THE PLAN

**A.    ADMINISTRATIVE CLAIMS AND RELATED BAR DATE**

In accordance with Section 2.2 of the Plan, and except as otherwise ordered by the Bankruptcy Court (including any order providing for an earlier date), requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Reorganized Debtor, and the Bankruptcy Administrator no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals.

**B.    EXECUTORY CONTRACTS**

    **1.    *Generally***

In accordance with Section 5.1 of the Plan, as of the Effective Date, all executory contracts and unexpired leases of the Reorganized Debtor that (1) have not previously been assumed or rejected by Order of the Bankruptcy Court, or (2) are not the subject of a motion to assume/reject pending on the Confirmation Date, shall be deemed REJECTED by the Reorganized Debtor.

    ***2.    Claims Bar Date Relating to Executory Contracts and Unexpired Leases***

In accordance with Section 5.3 of the Plan and except to the extent a prior order of the Bankruptcy Court provided for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall be filed with the Bankruptcy Court within thirty (30) days after the Confirmation Date. Any Claims not filed within such time shall be released and discharged and forever barred from assertion against the Debtor, the Estate, and the Reorganized Debtor.

**C.    AVOIDANCE ACTIONS AND OTHER CAUSES OF ACTION**

Except as otherwise provided in the Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as the Reorganized Debtor deems appropriate, any and all claims and Causes of Action, including, but not limited to, Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, any claims and Causes of Action specified in the Plan.

**D.    DISTRIBUTIONS**

All Distributions under the Plan will be made as outlined above and as set forth specifically in Articles 3 and 6 of the Plan.

**E.    OBJECTIONS TO CLAIMS**

Following the Effective Date, the Reorganized Debtor shall be authorized to object, or to succeed

or otherwise join any objection filed by the Debtor prior to the Effective Date, to Claims so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan (excluding Claims previously allowed by Final Order of the Bankruptcy Court). Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one hundred and twenty (120) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon the entry of an order by the Bankruptcy Court extending such deadline. An objection to the allowance of a Claim by the Reorganized Debtor must be filed with the Bankruptcy Court and served upon the holder of the Claim and all parties who have requested notice.

Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtor filed after the Confirmation Date shall be automatically disallowed as a late-filed claim, without any action by the Reorganized Debtor, unless and until the party filing such Claim obtains the written consent of the Reorganized Debtor to file such Claim late.

Prior to the Effective Date, the Debtor shall litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against it as the Debtor may choose. From and after the Effective Date, the Reorganized Debtor shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims. Prior to the expiration of thirty (30) days from the date of service of the objection, the Claimant whose Claim was the subject of the objection must file a response to the objection with the Bankruptcy Court and serve the response upon the objecting party and the Reorganized Debtor. If the Claimant whose Claim was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding Claimant without further notice or hearing. All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in section 102(1) of the Bankruptcy Code).

## F.    MISCELLANEOUS

### 1.    *Retention of Jurisdiction*

Pursuant to Article 12 of the Plan, the Bankruptcy Court will continue to retain jurisdiction after Confirmation of the Plan to resolve all outstanding matters in the Chapter 11 Case and with respect to the fulfillment of the obligations of the Reorganized Debtor under the Plan.

### 2.    *Discharge*

The consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any kind against the Estate or the Debtor. The Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Estate and Debtor, except as otherwise specifically provided in the Plan. On the Confirmation Date, as to every discharged Claim and other debt of the Debtor, the holder of such Claim or other debt of the Debtor shall be permanently enjoined from asserting against the Reorganized Debtor, or against its assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act, omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date except as expressly set forth in the Plan.

### 3.    *Release of Certain Claims and Actions*

As of and on the Effective Date, all Persons or Entities who have held, hold, or may hold Claims against the Estate and/or the Debtor shall be deemed to have waived, released, and discharged all rights or

claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Effective Date against the Estate and/or the Debtor, except as otherwise provided for in the Plan (including the documents filed as Schedules or Exhibits to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to performance or nonperformance under the Plan or related instruments, securities, agreements or documents, or to any action or omission that constitutes actual fraud or criminal behavior.

### 4.    *Conditions Precedent to Confirmation*

The Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order.

### 5.    *Conditions Precedent to the Effective Date*

The Plan shall not become effective unless and until the Effective Date (as defined in the Plan) occurs. The Effective Date shall occur upon the earlier of: (a) the Business Day that is sixty (60) days from entry of the Confirmation Order; or (b) upon satisfaction of the conditions set forth in Article 10 of the Plan.

### 6.    *Rounding*

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as unclaimed property under the Plan.

### ARTICLE V
### CONFIRMATION OF THE PLAN

## A.    FEASIBILITY

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor unless liquidation is contemplated under the Plan. In connection therewith, the Debtor is confident that there will be sufficient funds on hand to satisfy the minimum distributions required under Section 1129(a)(9) of the Bankruptcy Code and the obligations of the Reorganized Debtor under the Plan.

## B.    ACCEPTANCE

As a condition to Confirmation of the Plan, section 1129(a) of the Bankruptcy Code requires, with certain exceptions, that each impaired Class accept the Plan. In general, a class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims of that class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash. The Bankruptcy Code defines acceptance of a plan (a) by a class of creditors entitled to vote thereon as acceptance by holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that class and (b) by a class of equity holders entitled to vote thereon by acceptance two-thirds in amount of such interests. Each calculation, however, includes only those holders of Allowed Claims who actually vote to accept or reject the Plan. Under section 1126(f) of the Bankruptcy Code, classes of Allowed Claims that are not "impaired" under the Plan are conclusively deemed to have accepted the Plan. Under section 1126(g) of the Bankruptcy Code, classes that receive no distributions under the Plan are conclusively deemed to have rejected the Plan. For these reasons, acceptances of the Plan are being solicited from all Classes impaired

pursuant to the Plan, if any.

## C.    NON-ACCEPTANCE AND CRAM DOWN

If any Class of impaired Claims fails to accept the Plan, the Debtor will seek to effect a "cram down" on such dissenting Class and all Classes that are junior to such dissenting Class under section 1129(b) of the Bankruptcy Code. The Debtor also reserves the right to amend the Plan and request the Bankruptcy Court to confirm the Plan as further amended. If an amendment(s) to the Plan is material, the Debtor may have to re-solicit acceptances from any Class affected by the change(s), unless that Class can be deemed to have accepted or rejected the Plan.

The Plan's treatment of Classes is consistent with the foregoing. Consequently, the Debtor believes that if any of the holders in Classes that are impaired reject the Plan, the Plan may be confirmed over such opposition. Pursuant to section 1129(b) of the Bankruptcy Code, the Debtor will seek Confirmation of the Plan, notwithstanding the possible rejection of the Plan by holders of Claims in any class.

## D.    BEST INTERESTS TEST (LIQUIDATION ANALYSIS)

Notwithstanding acceptance of the Plan in accordance with section 1126 of the Bankruptcy Code, the Court must find that each member of an impaired class of creditors, if any, has each accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such creditor or interest holder would have received or retained if the Estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes the Plan complies with this "best interests" test.

Following confirmation of the Plan, the Reorganized Debtor will continue to operate as a going concern. Pro forma income projections attached hereto as <u>Exhibit B</u> demonstrate what the Debtor believes the Reorganized Debtor's income and expenses will be during the term of the Plan, and the amounts that will be available for distribution to the holders of Allowed Claims from its operations. The projections are based upon the Debtor's recent, pre-petition financial performance, adjusted for any changes in income levels and expenses experienced during the Chapter 11 Case.

To determine what Creditors would receive if the Debtor's Estate were liquidated under Chapter 7, the dollar amount that would be generated from the liquidation of the Debtor's assets must be considered. The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of the Estate's assets. The Estate's interest would necessarily be reduced by the amount of any secured claims, the costs and expenses of liquidation, and such additional administrative claims and priority claims that may result from the liquidation of the Estate assets. These calculations are set forth in a hypothetical liquidation analysis attached hereto as <u>Exhibit C</u>.

Conversion of the Chapter 11 Case to a case administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would involve greater expense and risk than the reorganization contemplated by the Plan. For example, conversion of the Chapter 11 Case would require the appointment of a trustee to conduct the liquidation of the Estate. Such a trustee would likely have limited knowledge of the Chapter 11 Case or of the Debtor's records, assets, or former business. The fees charged by a Chapter 7 trustee and any professionals he or she would hire (such as legal counsel, accountants, appraisers, brokers, and the like) could impose additional administrative costs on the Estate that will not be incurred under the Plan, and which would be paid ahead of Allowed Administrative, Priority Tax, and Other Priority Claims. When coupled with the inevitable delay caused by the appointment of a Chapter 7 trustee and retention of the trustee's professionals, distribution to holders of Allowed Claims that would

otherwise be made on or after the Effective Date of the Plan necessarily would be delayed for an indefinite period.

Note that Exhibit C reflects a hypothetical liquidation analysis of the Debtor's Estate. This analysis is based on assumptions that the Debtor believes to be reasonable based on the best information available. However, there are economic, legal, and other uncertainties that could change the forecasted results in an actual liquidation. Nevertheless, for the reasons described above, the Debtor has concluded that the Plan provides Creditors with recoveries that have a present value greater than the present value of distributions they would receive if the Estate were liquidated under Chapter 7.

Accordingly, the Debtor believes that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code

## ARTICLE VI
## MATERIAL UNCERTANITIES AND RISK FACTORS

Holders of claims against the Debtor and the Estate should read and carefully consider the risk factors set forth below, as well as other information set forth in the Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein). These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and implementation thereof.

### A.    CERTAIN DISPUTED CLAIMS

The feasibility of the Plan is predicated upon the levels of the Claims not being materially in excess of the amounts estimated herein and in the Plan. If such claims are substantially in excess of the estimated amounts, the Debtor's ability to satisfy its payment obligations under the Plan could be impacted. Moreover, the stated amounts of claims in each Class listed above are merely estimates based on the amounts listed on the Debtor's Schedules, the current claims register published by the Clerk of the Bankruptcy Court, and the Debtor's projections regarding the amount of filed Claims that will be ultimately disallowed. All amounts are subject to change upon the completion of the claims review and objection process by the Reorganized Debtor.

### B.    CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

If any conditions precedent to Confirmation and the Effective Date are not satisfied, the Plan may be withdrawn and the Confirmation Order vacated.

### C.    CERTAIN TAX MATTERS

The Debtor is unaware of any tax consequences to it or the holders of Claims arising from the implementation of the Plan. However, nothing in the Plan or Disclosure Statement should be considered a representation or advice concerning any such tax consequences.

**ARTICLE VII**
**CONCLUSION**

For the reasons set forth in this Disclosure Statement, the Debtor believes that confirmation and consummation of the Plan is preferable to all other alternatives. The Debtor thus urges all Creditors entitled to vote to accept the plan and to evidence such acceptance by returning their ballots so that they will be received by_____ __, 2020.

Dated: Charlotte, North Carolina
      November 26, 2019

               Respectfully submitted,

               Radford Quarries, Inc.

    By:        */s/ D.J. Cecile, Jr.*
               D.J. Cecile, Jr.
               Vice-President and Chief Financial Officer